THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LUIS M. ROSADO, Defendant and Appellant.

No. 97.     Decided May 31, 1963.

*Félix Rivera Torres* for petitioner. *J. B. Fernández Badillo,* Solicitor General, and *Jorge Segarra, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. CHIEF JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

Julia Marín Rodríguez contracted marriage with Jesús Espinosa on January 10, 1956 and was separated from him the following day. Espinosa sailed the same day for the United States where he was still living on December 28, 1960.

In July 1956, Julia and Luis M. Rosado, appellant herein, started to live together under the same roof as husband and

wife. A girl named Nilda was born of those relations in Fajardo on May 5, 1957, the birth of which was recorded three days later—the eighth of that month and year—in the Registry of Vital Statistics of that town, her parents being, according to such registration, Luis Miguel Rosado Alejandro and Julia Marín Rodríguez. Both signed the record of Nilda's birth.

Julia Marín and appellant were separated in September 1957 and she went to live in Juncos. From the time they were separated Rosado gave her $3 a week for the support of his daughter Nilda until January 1960 when he ceased to do so.

On December 20, 1960 Julia Marín Rodríguez filed a complaint against Luis Miguel Rosado Alejandro for the offense of abandonment of minors. He was found guilty by the district court and sentenced to serve one-month imprisonment in jail, which was suspended during such time as he gave his daughter the sum of $3.50 a week for support. On appeal, the Superior Court affirmed the judgment and on certiorari to this Court we issued the writ of review.

The birth certificate of Nilda Rosado Marín was admitted, without objection, at the trial in the district court. Rosado's defense was predicated exclusively on the status of married woman of Julia Marín, relying on our decision in *Pérez* v. *Superior Court*, 81 P.R.R. 805 (1960). He stated the same theory in the Superior Court and he raises an identical issue in his petition before this Court.

■■ The case of *Pérez* v. *Superior Court*, considered in its proper sphere, is not applicable to the situation presented in the case at bar. Here—unlike *Pérez* in which the alleged father denied as a question of fact the minor's paternity—defendant admitted that Nilda was his daughter, having voluntarily acknowledged the paternity in the birth record made three days subsequent to the birth, which is the only record made in the Registry. For the purposes of a criminal

action for abandonment of minors, such acknowledgment has the probative value accorded by law to registration certificates[1] whenever in the Registry of Vital Statistics there is no other conflicting record of such paternity,[2] in which case one who has formally accepted the paternity before the official government agencies cannot escape the criminal liability which his own act entails. In such situation there is no controversy here on the paternity which, under the circumstances present in *Pérez* v. *Superior Court, supra,* makes it necessary to resort to a civil plenary action, according to the holding in *Agosto* v. *Javierre,* 77 P.R.R. 444 (1954), since the challenge of the filiation which would entail in itself a judicial determination of the controversy on paternity could not be decided within the criminal action.

For the reasons stated the judgment will be affirmed.

---

[1] ". . . A copy of the record of any birth, marriage or death, after being certified by the Secretary of Health or by any persons by him authorized, shall constitute prima facie evidence before all courts of justice of the facts set forth therein." Section 38 of Act No. 24 of April 22, 1931, as amended (24 L.P.R.A. § 1237).

[2] The dictum in footnote (3) of *Pérez* v. *Torres,* 79 P.R.R. 575, 580 (1956), to the effect that "A natural father may acknowledge by his own voluntary determination in a birth record as well as in any other public document, including affidavits (24 L.P.R.A. §§ 1132, 1134, 1165, and 1231) a child born of a single woman. His act, however, is invalid at law when the child is born of a woman married to another man at the crucial time, because it implies the destruction of the status of legitimate child granted by the law to the child. But the voluntary acknowledgment

would be ratified in case the legitimacy is subsequently destroyed by the means and in the manner permitted by law," should be fairly considered applicable only to those cases in which there is already a conflicting record of the paternity, in addition to those in which there is fraud.